[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This custodial dispute, arising within a dissolution action, involves a plaintiff wife, aged 56, and a defendant husband who will be 56 years of age on July 10th. They married in Pawtucket, Rhode Island on May 16, 1964, twenty-eight years ago.
There were three children of this marriage:
 Orna Marie Benison, born December 16, 1973, was adopted, and is now more than eighteen years of age.
 Martha Benison, born April 28, 1977, was also adopted, and is now 15 years of age.
Patrick Benison, born October 26, 1980, is now 11. CT Page 6304
Both parents have resided continuously in this state for the past twelve months. Neither is the recipient of public assistance from the State of Connecticut or any governmental subdivision. Each testifies that their marriage has broken down irretrievably.
Atty. C. Ian McLachlan represents the plaintiff mother.
Atty. J. Patrick Dwyer represents the defendant father.
Atty. Kathleen D. Stingle represents the minor children.
The court appointed evaluator was Anne E. Phillips, Ph.D.
FINDINGS: CUSTODIAL
The plaintiff mother, Muriel Benison, is fragile and emotionally vulnerable.
Although she was employed until 1977, she was basically a housekeeper and a mother — the primary custodian of the children during their early years. She has had difficulties with self-esteem and self-assertion and periodically sought counseling for the problems that resulted, particularly those problems that arose in her relationship with her husband.
In the defendant father, Francis Benison, she paired herself with a man who was competitive and controlling. He dominated her. As a housekeeping mother with low self-esteem, who found it difficult to assert herself, she became her husband's foil.
He scoffed at her weakness in seeking counseling and he avoided meaningful participation in her quest for stability and equality in the marriage.
The defendant father became her competitor rather than her marital partner.
When she concluded that she could relieve her anxiety and her depression only through terminating her marriage, and found the strength to file for divorce, defendant father used her legal action to condemn her lack of family integrity and blame her for the disintegration of the family unit.
Vulnerable and fragile, the plaintiff mother became defendant father's marital victim. Where she was passive and indecisive, he was aggressive and firm. Where she was brittle, he was confident. He was a competent spokesman for his position that he was the parent, not she, and that she, poor soul, was chronically troubled. CT Page 6305
The defendant father was obviously annoyed that his wife sought a divorce. He was quite willing to continue the relationship as it was. It suited him. She served. He manipulated and dominated.
He strongly opposed counseling for the children. In the words of the court appointed evaluating psychologist, Anne M. Phillips, Ph.D., he "responded negatively to questions about potential therapy for the children or the family. He states unequivocally that the children had not been harmed or made unhappy by the family disputes and that any treatment would be unnecessary."
Faced with a trial court judge, a counsel for the minor children and a court ordered evaluator who all obviously concurred in the need for family counseling, he reversed his position in the courtroom. There is consistent historical reason to question his sincerity.
Testimony of the eighteen year old daughter, estranged from her mother, made it clear that Mr. Benison's negative view of counseling had been adopted by at least one of the children. Orna scoffed at the thought that she might join her mother for counseling.
Dr. Phillips reported Mrs. Benison to be "limited in available coping skills so that she is ill-equipped to handle the stress of her current living situation or to respond to the complexities and subtleties of the relationships in which she finds herself." She notes that "Mrs. Benison's distress is compounded by realistic concerns about her ability to fend for herself once divorced." In that portion of her report dealing with Mrs. Benison, Dr. Phillips concludes by reporting, "Mrs. Benison is committed to her maternal role . . . She is aware of (her two minor children's) emotional and developmental needs, and appears particularly attuned to the unique difficulties experienced by Martha (neurologically impaired, immature, socially inept) . . . More than is her husband, Mrs. Benison is attuned to the insistently negative effect on the children of the stress and conflict in which they live, as well as the negative impact on their personality development of being in the midst of a manipulative, material-oriented, struggle between their parents."
The court appointed evaluating psychologist, whom this court found to be a particularly credible and competent witness in this case, submitted an evaluation of the father that took the court's breathe away. CT Page 6306
Dr. Phillips reported Mr. Benison told her he was "unable to articulate any area of adequacy or benefit in Mrs. Benison's relationship with the children." He felt he should have the children "100%". He offered the psychologist no plan of visitation of the children with their mother. His Claims for Relief did not offer any specific visitation schedule.
Nor did he suggest any financial support for Mrs. Benison when Dr. Phillips inquired. He cited economic difficulties. He felt that Mrs. Benison "doesn't serve much purpose in the childrens' lives", and when pressed by Dr. Phillips, she reported he acknowledged that the best outcome might be his wife's death. ". . . you get to the point where you feel maybe its better if the other person is dead."
Mr. Benison impressed the court as someone who was seeking to destroy his wife, both economically and maternally.
He worked actively to estrange the children from their mother. And succeeded. He has convinced the children that, by initiating a divorce, their mother has abandoned them. The children accept his interpretation that he is the victim in this marriage and that his wife is the aggressor.
The father's response to his wife of 28 years is reflected in the children's comments.
Dr. Phillips reports that fifteen year old neurologically impaired Martha says her mother is "selfish": she will not pick up the childrens' clothing, iron her husband's clothes, stop snoring so her husband can get a good night's sleep, or get breakfast on time. "I shouldn't have to wait for breakfast. It should be on the table when I come down."
Eleven year old Patrick, reflecting his father's fiscal focus, told the evaluator that all the assets of the marriage should go to his father because he earned them. His mother should get her clothes, maybe a dresser, if Dad didn't mind. Dr. Phillips, a veteran of adversarial dissolutions, told the court she was "horrified" by Patrick's response. "There was something very disturbing about a boy who would recommend that as a settlement when he already told me he loved his mother", she testified.
This is the father whose first Claim for Relief requested this court to order no alimony for his unemployed wife of 28 years. In that first Claim for Relief, he further requested that this court award her $55,000 of the $668,543 of assets he reported on his sworn financial affidavit, together with one-third of a joint time share in Newport, Rhode Island, and CT Page 6307 that she retain her 1966 Mustang.
In the past, he permitted Mrs. Benison to buy the family's food, providing she submitted receipts for all her purchases. Mr. Benison testified he installed the receipt system because he suspected his wife was claiming twenty or twenty-five dollars above her actual purchases when seeking her food allowance.
Now her husband selects and purchases all the food — and Mrs. Benison is faced with a son, Patrick, who faults her because she doesn't cook the foods he likes to eat. Again, the father has created a problem and permits or encourages the children to blame their mother for his behavior.
Dr. Phillips observes that "The ever-hardening and ungiving attitude of the children towards their mother seems clearly to reflect and even echo the sentiments of their father and is extremely alarming in terms of their development of a flexible and acceptable sense of self and their need for access to both parents."
She notes, "Mr. Benison appears impervious not only to his own emotional issues, but to those of his children as well."
The court appointed evaluator adds "the psychological well-being of the children requires that significant effort be made to rehabilitate their image of, and relationship to, their mother . . . It also seems essential that the children and their mother participate in family therapy to address their issues of conflict and disappointment, and that this treatment be supported both financially and verbally by Mr. Benison."
Having had the benefit of both parents' testimony during the trial, the court found Dr. Phillips' evaluation to be insightful, accurate and most credible.
The court finds the father to have been responsible for the breakdown of the marriage.
In spite of father's behavior, and the serious nature of his impact upon the children — Dr. Phillips found the children to be "very significantly damaged" — both Dr. Phillips and Attorney Katherine Stingle, court appointed Counsel for the Minor Children, recommended that the children should reside with their father: "The children simply would not stay with their mother", observed Dr. Phillips.
Dr. Phillips introduced her recommendation as being "by default." She went on to say that "the childrens' preference for living with their father is based on their wish to be in CT Page 6308 the least leaky ship . . . Sixty percent of their preference is because Dad is more financially stable . . . Both (of the children) are unnerved by mother's emotional problems."
Dr. Phillips stressed the importance of the children having liberal and unrestricted access to their mother, but, when questioned, she acknowledged that Mr. Benison was "excessively controlling in her (the mother's access to the children." This issue was of "significant concern" to Dr. Phillips, who commented that "if the children lived with their father and saw their mother rarely, it would be very damaging." She was of the opinion Mr. Benison would discourage visits with their mother and felt "they (the children) would avoid the mother if he made his feelings clear."
Dr. Phillips went on to testify that mother's deficit in self esteem and coping skills — the emotional problems that unnerved the children — was reversible, if she had access to therapy without interference. Dr. Phillips made it clear that the sporadic counseling she was permitted during marriage did not qualify as therapy.
Dr. Phillips testified to what she described as Mr. Benison's "manipulative and coercive behavior" in his efforts to involve the children in the marital disputes. She found that damaging, and she evidenced that behavior by pointing out that "at the very least, he gave the children too much information about the conflicts and the financial settlement."
Father demands loyalty and the children comply with alacrity. The trial itself provided spontaneous evidence of Mr. Benison's domination of the children. As the trial began, he agreed to joint custody and that Orna, the eighteen year old, would not expose either herself or the family to the pain of her testimony. He became annoyed by some of Mrs. Benison's comments during her testimony, announced his displeasure, withdrew his joint custody agreement, and simultaneously announced that Orna would now testify. She did.
The court is reluctant to adopt the recommendations of both the evaluating psychologist and the counsel for the minors, who each hesitantly recommend that Mr. Benison be the custodial parent, but, like them, the court can find no alternative at this time.
The court notes Dr. Phillips closing comments, that it is "essential that the children and their mother participate in family therapy to address their issues . . . and that this treatment be supported both financially and verbally by Mr. Benison . . . Mr. Benison should in no way discourage or interfere CT Page 6309 with (mother's) visitation and should, instead, actively encourage and support it." In the closing moments of the trial, Mr. Benison pledged to cooperate and agreed to pay for all such counseling.
Mr. Benison should be aware that his pledge to support and assume full financial responsibility for the childrens' continuing participation in meaningful counseling with a competent and independant family therapist, as organized and scheduled by that therapist, is an essential element in this court's custodial decision.
The therapist is to be chosen by mother, father and the children and is to be given Dr. Phillips' February 12, 1992 report and a copy of this court's Memorandum of Decision prior to the first scheduled conference. If the parties are unable to agree upon the choice of therapist, within two weeks hereof, each is to thereupon file a memorandum with the court suggesting at least two therapists, with supporting argumentation and a brief cirriculum vitae, and the court will chose the therapist.
The court anticipates the counseling would include both parents as well as the children.
If any of the elements of father's counseling pledge are not fulfilled, any of the elements, this court would hope that succeeding courts would find such failure to be a substantial change of circumstances sufficient to support a Motion to Modify both custody and visitation. This court would also hope that succeeding courts would coordinate consideration of such a motion with a thorough up-dated evaluation of the parents and the children by Dr. Anne Phillips at Mr. Benison's expense.
If he and the children sincerely reach out to Mrs. Benison and afford her respect, he is the proper custodian. If he is unable to achieve that goal, the childrens' best interests are served by living in the custody of their mother.
FINDINGS RE: FINANCES
The court finds defendant's income to be as follows:
 Gross salary: $112,788 Rental income: 7,020 Dividend income: 2,392 Corporate percs: 2,000 ----- $124,200 After deducting social security 3,410 medicare 1,635 CT Page 6310 ------- Net prior to income taxes $119,155 weekly $2,290
The court finds the marital assets to be valued as follows:
 166 Furnace Avenue, Stafford Springs $315,000 Less mortgage 40,000 ------- 275,000 Lot on Furnace Avenue 30,000 Green Hill Beach, Rhode Island 350,000 Less first mortgage 150,000 Home Equity Loan 85,000 ------- 115,000 Newport, Rhode Island time share 50,000 Far Realty — 1/3 interest 250,000 IRA 17,850 Profit sharing plan and trust 158,500 Tax shelter — ALI V 20,000 Tax shelter — CRI-Capitol Realty Investment 20,000 1966 Mustang 10,000 1988 Honda Accord 8,000 -------- $954,350
ORDERS:
Having reviewed the evidence and the sworn financial affidavits of each party in the context of the required considerations set forth in Title 46b, Chapter 815j of the Connecticut General Statutes, the following orders shall enter:
1. DISSOLUTION
This marriage is dissolved on the grounds of irretrievable breakdown.
2. LEGAL CUSTODY
a. Both parents shall share joint legal custody of Martha and Patrick, it being in the best interests of the minor children at this time.
b. The parents shall consult on all major decisions involving the childrens' health, education and welfare.
c. If the parties are unable to reach an agreement after an exchange of relevant information, views and alternatives, CT Page 6311 father's decision shall be final.
d. It is the specific intent of this court, in bestowing final authority upon father, that he not use this power to bypass or minimize mother's co-parenting authority. Father is charged with the responsibility of communicating all relevant information to mother and is further responsible for affording her full opportunity to enter into meaningful and fruitful discussion. Mother's thoughts are to be given respectful hearings.
e. Father is specifically precluded from discussing these matters with the minor children in advance of his conversations with mother. Should mother and father jointly agree to include the minor children in discussions, mother is to have equal, full and respectful participation.
f. Father has a positive and an on going responsibility to assure mother a respectful audience with the children. This court has found that father enjoys a relationship with the children which renders him capable of meeting that responsibility. It requires a change of attitude and purpose by father.
g. If such continuing communication and respect are denied mother by father, or by either of the minor children, father shall be deemed to have violated this grant of paternal authority and this court invites mother to seek modification of that authority.
3. PHYSICAL CUSTODY
a. Primary physical custody shall be with the father.
b. It should be noted that continuing exercise of father's physical custodianship is conditioned upon father's sincere and continuing recognition of mother's joint custodial rights and upon his ability to assist the minor children in their recognition thereof.
c. Father's custodial rights have been granted in the expectation, in the best interests of the children, that father will exert the substantial influence the court has found he enjoys in such a recognizable and effective and sincere manner that the minor children will embrace his new attitude of maternal respect as their own.
d. The court recognizes that this need to reverse his own and his family's history will not be a simple task, but insists that it be undertaken by father with full vigor and with whatever reasonable means are appropriate and effective in order to earn the minors' meaningful concurrence. CT Page 6312
e. If father is at a loss as to how to achieve this responsibility, he might consider an on-going program of consultation with a competent child psychiatrist or psychologist.
4. ACCESS
a. Plaintiff mother shall have generous access to her minor children.
b. Generous access, at this time, shall include, but shall not be limited to, the following:
1. The second and fourth weekends of each month from Friday at 6 p.m. to Sunday at 7 p.m. and
2. The first, third and fifth Wednesdays of each month from after school to 7 p.m.
3. The parents shall alternate winter and spring school breaks from 5 p.m. on the day school goes into recess to 7 p.m. on the day before school resumes, commencing in 1993 with mother having the spring break.
4. Each parent shall have four consecutive weeks in the summer. Mother shall establish the schedule.
5. (a). Mother shall have the weekend before Christmas from Saturday at 4 p.m. to Sunday at 7 p.m. and Christmas Eve Day from 5 p.m. the night before to 6 p.m. of Christmas Eve Day.
(b). Father shall have Christmas Eve and Christmas Day from 6 p.m. on Christmas Eve until mid-week at 5 p.m. of the Christmas school break.
(c). Mother shall have the children mid-week at 5 p.m. of the Christmas school break until New Year's Eve at noon.
6. The parents shall alternate the childrens' birthdays, Memorial Day, July 4th and Thanksgiving from Thursday at 5 p.m. until Sunday at 7 p.m. Mother shall establish the alternating schedule.
7. Mother shall have Mother's Day. Father shall have Father's Day.
8. Mother shall have the children until 7 p.m. on any day in which they have a counseling session.
c. Father shall do nothing to interfere with Mother's access CT Page 6313 by scheduling, or permitting the scheduling, of anything that competes with her access. Further, should mother agree to any competing event, mother is specifically empowered to reconsider at any time.
d. The court anticipates that mother will seek additional access from time to time and would expect father to cooperate with all good will.
e. All communication regarding mother's access is to be conducted solely between the adults.
5. CHILD SUPPORT
a. Because the net weekly family income exceeds $1500, the Child Support Guidelines do not apply.
b. Plaintiff mother shall pay defendant father $125 per child per week as child support until Martha and Patrick reach their eighteenth birthdates, respectively.
c. Defendant father shall be entitled to claim Patrick as a dependant for income tax purposes. Plaintiff mother shall be entitled to claim Martha for income tax purposes.
d. Father shall prepare all the necessary documents to enable each parent to exercise that entitlement.
6. MEDICAL INSURANCE
a. Father shall provide health insurance for the benefit of the minor children.
b. All unreimbursed medical, dental, optical, prescription, mental health or other expenses related to the childrens' mental and physical health or well being shall be paid equally by the parents.
c. Father shall be responsible for transferring the existing medical coverage to plaintiff mother subject to Cobra and shall share the cost thereof with her for the Three year Cobra period.
d. The provisions of 46b-84(c) shall apply.
7. LIFE INSURANCE
a. Father shall maintain $250,000 of insurance on his life, naming plaintiff mother as irrevocable beneficiary thereof as long as he is obligated to pay her alimony. CT Page 6314
b. Father shall furnish mother, on her request, not more than once each calendar year, proof satisfactory to her, that said life insurance exists in the specified amount, without any liens or diminutions of any kind, and that the beneficiary is as required by this order.
8. ALIMONY
a. Father shall pay mother as periodic alimony, the sum of $915 per week, until her death or remarriage, as a study wage withholding from father's employer.
9. ASSETS
a. The financial findings herein set forth the specific value of each of the marital assets, creating a total of $954,350.
b. The court wishes those assets to be divided equally between mother and father.
c. The parties were so focused on their custodial issues, little attention was paid to the assets and the parties' preferences with regard to those assets.
d. The court recognizes that the parties may have mutual preferences which have not been revealed to the court during the trial and which the court may inadvertently, and unnecessarily, thwart if it enters an order without sufficient awareness.
e. Final divorce terms established by the parties themselves are historically more comfortable for the parties to live with and abide by.
f. Therefore, the court calls upon both mother and father to meet within one week hereof and negotiate an equal division of the marital assets in a manner satisfactory to both, using the values established by the court.
g. The agreement is to be in written form, signed by all three counsel as well as by plaintiff and defendant and is to be submitted forthwith to this court for its agreement.
h. If the parties are unwilling or unable to reach an agreement within fourteen days hereof, each party is directed to deliver a detailed written proposal to the court, specifying the rationale of its proposed equal division within twenty-one days hereof. Please advise the court whether or not you wish to waive oral argument. CT Page 6315
10. EDUCATION
a. This court is precluded from entering its own orders for the education of the children of the marriage after their eighteenth birthdate.
b. If the parties choose to create their own written agreement regarding the post-eighteen education of the children, the court would consider it. Of interest would be such issues as parental voice in the educational choices, administration of the funds, the childrens' post-divorce relationship with their parents and the distribution of unused funds after reasonable educational goals had been met.
c. This court stresses that any agreement facilitating the post-minority education of the children of their marriage must be mutual and completely voluntary.
11. PERSONAL PROPERTY
a. The parties' personal property, including the contents of the Connecticut and Rhode Island residences, shall be divided equally.
b. Each party shall be entitled to retain, free of any claim of the other, all heirlooms and gifts received from the party's family.
c. If the parties are unable to agree upon a division within sixty days hereof, the disputed personalty shall be sold at the direction of the plaintiff mother within ninety days hereof and the proceeds of the sale shall be divided equally between plaintiff and defendant.
12. ATTORNEYS' FEES
a. The court finds the fees reported to the court by the attorneys in this matter to be fair and reasonable under the circumstances.
b. Based on all the relevant statutory criteria, the evidence presented and the respective needs and abilities of the parties to pay, as well as the need to avoid undermining its other financial awards, this court finds awards of counsel fees to be fair and equitable.
c. Defendant father shall pay plaintiff wife one half of the attorneys' fees incurred by her in this matter within ninety days hereof. CT Page 6316
d. Each of the parties shall pay one-half of the fees of the counsel for the minor children within 90 days hereof.
13. COUNSEL FOR THE MINOR CHILDREN
a. The children of this marriage are obviously deeply affected by the court's decisions entered today.
b. Counsel for the minor children is to schedule an immediate conference with the clients, read this decision to them, explain it to them as it is read, and give each of them a copy of the decision.
c. In addition, counsel shall give each child counsel's business card and advise the children of counsel's continuing availability for consultation.
d. Following the conference, counsel for the minor children shall forward a memorandum to the court, notifying it that the conference has taken place.
Joseph L. Steinberg, Judge